## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### 22-3084

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**LUCAS DENNEY,**

**Defendant-Appellant.**

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

### APPELLANT'S OPENING BRIEF

**District Court**
**Cr No. 22-cr-00070-RDM**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), the undersigned certifies as follows:

A. Parties and Amici

The parties that appeared in the district court and that are now before this Court are Lucas Denney (appellant) and United States (appellees). There are no amici curiae or intervenors.

B. Rulings Under Review

The defendant, Lucas Denney, seeks review of the sentence imposed by the District Court, including the application by the District Court of the United States Sentencing Guidelines to his conviction for a violation of 18 U.S.C. Sec. 111(b).

C. Related Cases

Counsel is not aware of any other cases presenting "substantially the same or similar issues" currently pending before this Court.

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

# **TABLE OF CONTENTS**

INTRODUCTION………………………………………………………….……4

JURISDICTIONAL STATEMENT ………………………………………...………..4

ISSUES PRESENTED FOR APPEAL……………………………………….........5

STATUTORY AND REGULATORY PROVISIONS………………….………….5

STATEMENT OF THE CASE…………………………………………….………5

   I.  Statement of the Facts……………………………………………………5

   II.Procedural History……………………………………………………..6

SUMMARY OF THE ARGUMENT…………………………………………….9

ARGUMENT…………………………………………………………………...10

   **A.** Standard of Review …………………………………………………..10

   **B.** The District Court Clearly Erred When it Applied the Two Level
       Enhancement under Sec. 2A2.2(b)(1) for "More than Minimal Planning" For
       Planning A Trip To Attend a Political Protest……………………………10

CONCLUSION……………………………………………………………..19

**INTRODUCTION**

Defendant Lucas Denney hereby appeals the sentence and judgment imposed upon him by the District Court for violation of 18 U.S.C. Sec. 111(b) in the course of the "riot" at the United States Capitol on January 6, 2021.

Defendant Denney contends that the District Court erred in the calculation of his Total Offense Level under the United States Sentencing Guidelines, and arrived at a recommended Guideline Range greater than that which applies to his offense of conviction. The Court then erroneously imposed a sentence of 52 months. That would have been above the recommended guideline range had the calculation been done correctly. Therefore, the Defendant seeks remand of the case for a correct calculation of the sentencing guideline range, and resentencing based thereon.

**JURISDICTIONAL STATEMENT**

This is an appeal of a final order from the United States District Court for the District of Columbia and this Court has jurisdiction pursuant to 28 U.S.C. Sec. 1291.

Final Judgement was entered on October 24, 2022. District Court Docket (CD) ECF No. 75. Pursuant to Fed.R.App.P. 4(b)(1)(A) a timely Notice of Appeal was filed on October 31, 2022. CD ECF No. 77.

## ISSUES PRESENTED FOR APPEAL

1.     Whether the District Court Erred in Applying a Two-Level Enhancement Under U.S.S.G. Sec. 2A2.2(b)(1) for "more than minimal planning."

2.     Whether the District Court Erred in Applying a Four-Level Enhancement Under U.S.S.G. Sec. 2A2.2(b)(2) for "use of a dangerous weapon."


## STATUTORY AND REGULATORY PROVISIONS

1.  18 U.S.C. Section 111(b)

2.  U.S.S.G. Sec. 2A2.2(b)(1) and (2).

## STATEMENT OF THE CASE

**I.** Statement of the Facts

For purposes of this Appeal, Defendant Lucas Denny is setting forth the relevant facts at they relate to the offense of conviction as charged in the single count indictment to which he pled guilty.

Defendant Denney traveled from his home in North Texas along with one companion to attend the political rally and protest in Washington DC on January 6, and was present on the west side of the Capitol where numerous physical confrontations took place between the crowd and members of the U.S. Capitol Police and the Metropolitical Police Department.  PSR Par. 27.

On January 6, 2021, at approximately 2:23 p.m., Officer K.K. had assumed a position on an elevated structure between the crowd and the west side of the

Capitol building.  PSR Par. 35.  The individuals below were throwing debris at police officers, including Officer K.K., who was armed with crowd-control spray and occasionally used it to repel the crowd.  *Id*. Defendant Denney worked his way through the crowd and attempted to grab the canister of crowd-control spay away from Officer K.K.  *Id.*

Officer K.K. then deployed the crowd-control spray and defendant Denney retreated into the crowd.  PSR Par. 36. Less than a minute later, defendant Denney picked up a plastic pvc pipe from the ground and swung it towards Officer K.K. PSR Par. 37.  Officer  K.K. and several other officers attempted to pull the pipe away from defendant Denney and the others in the crowd, but were ultimately unsuccessful. PSR Par. 38.

**II.** Procedural History

The defendant surrendered himself to the FBI Office in Del Rio, Texas on December 13, 2021, after being advised that a warrant for his arrest had been issued.  Exhibit 1 – District of Columbia Clerk's Docket ("CD"), ECF No. 5.   He made an initial appearance it the Western District of Texas on December 14, 2021. Exhibit 2 – WD TX Clerk's Docket (TXCD), ECF No. 2.

A detention hearing was held on December 17, 2021. TXCD, ECF No. 5, after which the Defendant was detained.  TXCD, ECF No. 5.  Inexplicably, the Defendant was also ordered removed to the District of Columbia as part of the

same order without the benefit of a hearing under Rule 5.1. TXCD, ECF No. 7. There is no evidence in the record that supports a finding of any waiver by the Defendant of his right to a hearing under Rule 5.1, and the Removal Order expresses the view that he would be entitled to such a hearing after arriving in the District of Columbia – a process that is contrary to the express language of Rule 5(c)(3)(C). Id.

A period of 45 days passed before the Defendant finally arrived, still detained in the custody of the USMS, in the District of Columbia – all without an indictment being returned or a preliminary hearing establishing probable cause being conducted. CD ECF No. 16.

On March 2, 2022, Defendant Denney moved for dismissal of the criminal complaint and immediate release from detention on the basis that no timely indictment had been returned against him pursuant to 18 U.S.C. Sec. 3161(b), no determination of probable cause had ever been made pursuant to Rule 5.1, and further detention was an unconstitutional violation of his right to liberty under the Fifth Amendment. CD, ECF No. 16.

On March 3, 2022, having been given only hours to respond by the Magistrate Judge, the government initially opposed the motion on legally specious grounds. CD, ECF No. 21. The District Court set a hearing on the motion for the afternoon on March 7, 2022. CD, Min. Order March 5, 2022.

In the morning on March 5, 2022, the government sought and obtained from a grand jury and out-of-time single count indictment charging the Defendant with a violation of 18 U.S.C. Sec. 111(b) – a crime of violence for which there was a presumption of detention.  CD, ECF No. 25.

The indictment was "out-of-time" because it came 107 days after the Defendant's initial appearance in the Western District of Texas – 77 days beyond the allowable period provided in Sec. 3161(b).

Unable to dismiss an indictment – even one sought and obtained in violation of Sec. 3161(b) – the Magistrate denied the motion for release as moot and ordered further briefing on the motion to dismiss.  CD, Min. Order of March 8, 2022.

At the Arraignment and Plea hearing held on March 14, 2022, Defendant attempted to enter a plea of guilty to the sole count of the Indictment, but that "motion" to enter that guilty plea was "denied."  CD, Min. Order of March 14, 2022.  No plea was entered and the matter was continued to March 17, 2022.  Id.

On March 17, 2022, the Court allowed the Defendant to enter a plea of guilty to the sole count of the Indictment charging him with a violation of Sec. 111(b).  CD, Min. Order of March 17, 2022.   Sentencing was set for June 9, 2022.  Id.

An initial sentencing hearing took place on July 21, 2022, but the sentencing of the Defendant was continued during that hearing to a dater to be determined.  CD, Min. Order of July 21, 2022.

On September 28, 2022, the district court sentenced the Defendant to a term of 52 months in custody.  CD, Min. Order of September 28, 2022.

## SUMMARY OF THE ARGUMENT

The District Court erred in applying a two-level enhancement for "more than minimal planning" because the "planning" activities identified by the PSR, the Government, and the Court were not "planning" involving the offense of conviction – they were all steps taken days and weeks in advance of a plan to attend a political rally and protest.  The offense conduct here involved a discreet crime of opportunity and the "planning" that formed the basis of the application of the sentencing enhancement for "more than minimal planning" was not related to the offense conduct and should not have been used to justify the two-level increase under Guideline Section 2A2.2(b)(1).

Further, the four level enhancement for use of a "dangerous instrument" should not have been applied.  While the Defendant did admit to using an item that was capable of being a dangerous instrument – thereby making him guilty of a violtion of Sec. 111(b) – the instrument was not employed in a manner that was an

actual danger to the officer. On that basis, the four-level enhancement for "use of a dangerous weapon" under Sec. 2A2.2(b)(2) was an error.

## ARGUMENT

### A. Standard of Review

Where a defendant contends the district court erred in the calculation of the Guidelines, this Court accepts the district court's findings of fact unless they are clearly erroneous and give due deference to the district court's application of the Guidelines to the facts. United States v. Flores, 995 F.3d 214, 219 (D.C. Cir. 2021)

### B. The District Court Clearly Erred When it Applied the Two Level Enhancement under Sec. 2A2.2(b)(1) for "More than Minimal Planning" For Planning A Trip To Attend a Political Protest.

The Defendant objected at sentencing to the application of a two-level enhancement for "More Than Minimal Planning" pursuant to U.S.S.G. § 2A2.2(b)(1).

Paragraph 59 of the Presentence Report justified the application of the "more than minimal planning" enhancement based on the following:

Defendant Denney began organizing the trip for himself and others beginning in mid-December 2020. As President of Patriot Boys, he conversed with presidents of other militia groups so they could join forces and fight against ANTIFA. Prior to his departure, defendant Denney designated Mr. Hazard as Sergeant at Arms for security purposes. Additionally, defendant Denney solicited donations to purchase protective gear – helmet, vests, medical equipment and pepper spray. Defendant Denney also recruited others online to join Patriot Boys

and attend the Stop the Steal Rally. In essence, defendant Denney's activities involved more than just traveling to the January 6, 2021, and securing lodging. Defendant Denney's organizing, recruiting, soliciting donations, and purchasing protective gear involved more than minimal planning, for which two levels are added. USSG §2A2.2(b)(1).

The district court imposed the two-level enhancement, stating as follows at the

sentencing hearing:

> Well, but it's evidence that he believed that they were going to be marching to the Capitol. It's actually evidence that he had reason to think that President Trump believed at the time that he was going to be marching with them to the Capitol, that he got that information from somewhere. He may have gotten it off a chatroom. But if he knows or believes that there's going to be a march to the Capitol with President Trump perhaps with them, and he is getting helmets, body protective gear of some type, recruiting others to come with him, getting pepper spray, that sure sounds like planning.

Exh ___, 9/28/22 Sentencing Hearing, p. 18.

The Court continued:

> I've got to tell you, the self-defense I find -- I will restrain myself, I find that completely implausible, and I'll tell you a couple of reasons why. One is that in the text messages, your client is talking about, "I can't say this over open media." I don't think anyone thinks that Antifa is out there surveilling text messages of people, it's a concern about the government. Two, your client at one point in the text messages or postings says, "The D.C. police is working with Antifa together," and he equates the police and Antifa. And then after the attack on the Capitol, your client is still blaming the attack on the Capitol on Antifa people who are -- even after the attack, is saying that it was Antifa there wearing MAGA hats. It strikes me that the much more plausible explanation of it is that Antifa is a convenient, made up goblin to justify whatever you're doing. And you say oh, no, we're here to fight Antifa. There's no evidence of any Antifa. He's still talking about, even after the attacks, Antifa, and he's equating Antifa with the D.C. police.

Id., p. 20.

Based on the facts that the Defendant equipped himself with certain items and paraphernalia relevant to the potential for violence in Washington D.C. on January 6, and because there had been online communications involving the Defendant that discussed the potential for violence on January 6, the Court then determined that the Defendant's preparations and planning for the trip was the type of "planning" contemplated by Sec. 2A2.2(b)(1).

But the district court erred in imposing the two-level enhancement in Sec. 2A2.2(b)(1) because the factual basis for "planning" as identified by the Government and relied upon by the court did not involve "planning" of the offense – it involved planning for a trip to political protest where the potential for violence -- *from counter-protesters* -- could not be ruled out. Six weeks prior at a similar protest there was a clash between pro and anti-Trump demonstrators that resulted in numerous physical injuries, including the near stabbing death of a pro-Trump protester in the area now known as "BLM Plaza."

The "assault" which forms the basis for the Defendant's conviction involved a discreet episode of conduct directed as a particular law enforcement officer covered by the statute – Officer K.K. That assault that took place over a time frame of approximately 4 seconds based on video evidence that captured the event and was made part of the record during the sentencing hearing. Those four

seconds compose the totality of the "offense conduct" that corresponds to the charge in the single count indictment.

The "offense conduct" involved the opportunistic use of a "dangerous instrument" laying on the ground – a length of flexible PVC plastic pipe. The evidence showed the defendant lifted the pipe into an almost vertical position, and then dropped it down in an effort to strike a OC[1] spray device in the hands of Officer K.K that he was using on the crowd. The pipe did not make impact with Officer K.K. and he was able to grab the end of the pipe before it was pulled back. A short "tug-of-war" over the length of pipe ensured before Officer K.K. turned loose the end he was holding.

For purposes of applying Sec. 2A2.2(b)(1), Application Note 2 makes clear that the "planning" to be considered should relate to the "offense conduct." Note 2 requires a comparison of the facts of the offense of conviction to the commission of the same offense "in a simple form." The district court erred in applying the enhancement because if failed to address the issue to which the enhancement is addressed.

By its terms the enhancement is to be applied based on a comparison of the offense conduct to hypothetical conduct that would represent the offense "in a simple form." The comparison is between two sets of offense conduct, i.e., the facts making up the "assault" in the offense conduct committed by a defendant,

and offense conduct in "a simple form"   This is made clear in Application Note 2 which specifically addresses the (b)(1) enhancement:  "For purposes of subsection (b)(1), "more than minimal planning" means more planning than is typical for commission of the offense in a simple form."

Defendant Denney's "planning" for a trip to a political rally/protest, and his acquisition of various items to bring with him, was not "planning" of the "offense conduct" – i.e., the assault on Officer K.K. using the pvc pipe.   The Defendant has located no prior case from this Court applying "planning" enhancement under 2A2.2(b)(1).

Nor is there abundant case authority in any other circuit.  However, the little case authority that does exist supports the Defendant's argument here, i.e., that the "planning" relied upon to support the application of the enhancement should be conduct taken specifically to further the execution of the offense of conviction, as compared to similar conduct involving little or not planning prior to the act(s) comprising the offense of conviction.

Four cases from other Circuits are consistent with Mr. Denney's analysis of a direct connection between the planning and the offense conduct necessary to trigger the two-level enhancement under 2A2.2(b)(1).

In *United States v. Kanu-Bradley*, 2022 WL 1055179 (5th Cir. April 8, 2022), the Fifth Circuit wrote:

The record supports the district court's finding that there was more than minimal planning in this case. Kanu-Bradley's criminal conduct was not spontaneous ... affirmative steps in planning took place, such as bringing guns to the robbery, discussing a plan to commit the robbery, and giving a signal at the start of the robbery and assault.

The lack of "spontaneity" and bringing guns to a robbery, discussing a plan for the robbery, and giving a signal to start the robbery, were all reflective of a level of planning that distinguished the robbery from the offense "in a simple form."

In *United States v. Simpson*, 760 F.App'x. 931 (11th Cir. 2019), the Eleventh Circuit wrote:

> Specifically, the record indicates that Byrd and Simpson planned to lure the CI to Byrd's apartment for the purpose of robbing the CI of the gun-purchase money. Byrd stated in a post-arrest interview that he planned the robbery with Simpson, and their actions on the day of the robbery support that interpretation. Byrd notified Simpson when the CI was on the way, and they coordinated their activities by phone while the CI was at Byrd's apartment. Then, with Byrd's tip-off, Simpson lay in wait for the CI behind the apartment building so that he could approach the CI from behind and prevent identification.

Luring the victim to a location of vulnerability, communicating that the victim was on the way, coordinating movements of the perpetrators by phone, and lying in wait in a manner to avoid identification by the victim were all aspects of planning the actual offense as it unfolded that distinguished it from a robbery in a simple form.

In *United States v. Coombs*, 823 F. App'x 613 (10th Cir. 2020), the Tenth

Circuit wrote:

> By contrast, the government contends and Coombs does not
> dispute -- that the simple form of his crime required only that
> on a particular date, at a particular location, he knowingly
> assaulted another individual with a dangerous weapon with the
> intent to do bodily harm....
>
> ¶ [I]t is undisputed that Coombs was in a stall in the women's
> restroom when M.C. entered the restroom.... he was waiting in
> the stall and knew he was in the women's restroom... because he
> wrapped his face in toilet paper, he attempted to conceal his
> identity. According to Coombs, his attack on M.C. was
> spontaneous and did not involve significant affirmative steps to
> conceal the offense. The district court found otherwise, and we
> discern no clear error in that determination.

The defendant – a male – went into a women's restroom and waiting for the

intended victim; while there he remained in a stall out of the victim's sight; and he

wrapped his face in toilet tissue to conceal his identity – all done in preparation for

an attack on a specific victim, and intended to increase the likelihood of success

and decrease the likelihood of being caught.

Finally, in *United States v. Ray*, 59 F.3d 1137, 1144, (2nd Cir. 1995), in

interpreting the earlier guideline prevision for "more than minimal planning" as

defined in Sec. 1B1.1(f), the Second Circuit found:

> This enhancement is 'usually applied to sophisticated crimes or
> offenses requiring repeated acts over a period of time.' *United States v.
> Cropper*, 42 F.3d 755, 758 (2d Cir.1994). In this case, Perez did not
> formulate a sophisticated plan or an elaborate scheme. There was no
> evidence, for example, that Perez took steps to have Connelly placed in the

cell with him. Although Perez did place a phone call to ascertain that Connelly planned to testify against Ryan, the phone call was made immediately prior to the attack. The crime therefore did not involve more planning than typical for the commission of this offense …. And the crime did not involve repeated acts over a period of time. We therefore hold that the court clearly erred in concluding that Perez effectuated more than minimal planning in the retaliation against Connelly.

In each cited case, the "planning" was specific to bringing about the execution and success of the offense conduct. No case has been found that involved generalized planning days or weeks ahead of an event that only provided an opportunity for spontaneous criminal activity such as what Defendant Denney did on January 6. In each of these three cases there was a clear intent to commit the actual offense conduct that was the subject of the conviction and the planning was integral to the commission of the offense and not tangential as is the case here. crime that was later committed in a manner that was consistent with the planning."

Defendant Denney objected at sentencing to the application of the four level enhancement pursuant to application of § 2A2.2(b)(2) for "use" of a "dangerous weapon." Defendant did not use a "weapon" as contemplated under the Guideline.

The plastic pvc pole was an "instrument" not ordinarily used as a weapon, and that is an important distinction under the § 2A2.2(b)(2). Where the item used was not itself a "weapon", but instead a "dangerous instrument," the 4-level enhancement requires more that simple "use." Application Note 1 under § 2A2.2 states:

"Dangerous weapon" ... includes any instrument that is not ordinarily used as a weapon (e.g. a car, a chair, or an ice pick) if such instrument is involved in the offense *with the intent to commit bodily injury*."

The pvc pipe is an instrument "not ordinarily used as a weapon." As such, the 4-level enhancement applies only if that instrument was used "with the intent to commit bodily injury" as stated in Application Note 1.

The evidence at the sentencing hearing – including the video submitted by the Government regarding the use of the pvc pipe, showed that the pole was used in an attempt to knock the OC spray device out of Officer K.K.'s hands. The video showed that the Defendant did not swing the pvc pipe at Officer K.K.'s head or torso – it was aimed at the object Officer K.K. was holding and using against the crowd of protesters assembled below and in front of his position. It was that device – and not Off. K.K. – that was the object of the use of the pvc pipe.

The Guidelines provide a +2 enhancement for having pled guilty to the Aggravated Assault -- subparagraph (b) – provision of the statute. But application of the enhancement for using a dangerous weapon should require more than simply an admission of the element of the offense, i.e., that a dangerous weapon was used. It should require evidence of the actual instrument employed, and the manner in which it was employed, put Officer K.K. in danger of serious bodily injury. There was an insufficient factual basis to support the additional +4 level enhancement for having used a "weapons" or "otherwise dangerous instrument with intent to do bodily injury" because the evidence did not support an intent to do bodily harm as reflected in the video. As a result, the two-level enhancement

was properly applied to Defendant Denny's guideline calculation pursuant to § 2A2.2(b)(7), but the additional four-level enhancement under § 2A2.2(b)(2) was applied in error.

## CONCLUSION

Based on the foregoing, Defendant Lucas Denney requests that the sentence imposed be set aside and that this matter be remanded to the District Court for the District of Columbia for resentencing.

Dated: September 11, 2023                    Respectfully Submitted,

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

**CERTIFICATION OF SERVICE**

I hereby certify that on September 11, 2023, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the District

of Columbia Circuit using the CM/ECF system. I certify that all participants in the

case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 27(d)(2)(A),

that the Appellant's Opening Brief was prepared in Times New Roman 14 point

font and contains 3799 words.

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
