# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

## 22-3084

**UNITED STATES OF AMERICA,**

                                            Plaintiff-Appellee,

v.

**LUCAS DENNEY,**

                                            Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

## APPELLANT'S CORRECTED REPLY BRIEF

**District Court**
**Cr No. 22-cr-00070-RDM**

                                        William L. Shipley
                                        PO Box 745
                                        Kailua, Hawaii 96734
                                        Tel: (808) 228-1341
                                        Email: 808Shipleylaw@gmail.com
                                        *Attorney for Defendant*

# **TABLE OF CONTENTS**

The Government Fails to Address the District Court's Error In Applying the "Planning" Enhancement……………………………………………………...3

Under The Specific Offense Characteristic Applicable to Aggravated Assault, A Dangerous Instrument Must Be Used With The INTENT To Commit Bodily Injury……………………………………………………………………...7

## A. The Government Fails to Address the District Court's Error In Applying the "Planning" Enhancement.

It is worth noting that the Government's primary support for the District Court's application of the "Specific Offense Characteristic" for "more than minimal planning" is to … quote the District Court. The Government seems to miss the point of the appeal, i.e., that the District Court's analysis – although maybe factually accurate – is incorrect with regard to application of the two-level enhancement based on those facts.

It is further worth noting that while the Government points out that the Defendant has cited "out of circuit" authorities on this particular subject, the reason for that is because there are no authorities in this Circuit on the application of the "planning" enhancement in Sec. 2A2.2(b)(1) with respect "aggravated assault" in violation of Sec. 111(b).

That is borne out by the fact that the Government cites no such authority from this Circuit contradicting the out-of-circuit authorities relied upon by the Defendant. In fact, of all the case citations by the Government on this issue, only one involves "planning" in the context of an assault charge of any kind – *United States v. Smith*, 953 F.2d 1060, 1066 (7th Cir. 1992).

In *Smith* the Seventh Circuit affirmed the application of the enhancement for "more than minimal planning" but the facts were similar to the cases cited by the Defendant here. There was a close temporal link between the "planning acts" and

the offense, as well as a direct link between the "planning acts" and the success of the offense.

> Smith planned his return to the bar with care, not only arming himself to the teeth but also modifying the M–16 by changing barrels, a step he believed would increase the victims' fright. He switched cars, apparently hoping to escape detection. (His parting threat would have left the owner on the lookout for the truck.) You can commit assault with a lot less preparation, making the 2–point increase for this offense appropriate.

*Id*.

All the other cases cited by the Government involved "planning" in contexts other than under Sec. 2A2.2 – mostly cases involving white collar offenses and the level of planning found in such crimes.

The cases cited by the Defendant, on the other hand, are much like *Smith* -- "aggravated assault" crimes sentenced under Sec. 2A2.2 with the "planning" enhancement imposed, and where the "planning acts" were directly linked to the carrying out of a plan to commit the specific assault charged.

The Defendant pled guilty to a violation of Sec. 111 – that is not a statute that criminalizes "fighting" as a general matter, so planning for "fighting" isn't necessarily planning for the offense. Sec. 111 criminalizes a variety of methods of interfering with federal law enforcement in the performance of its lawful duties – including by way of "assault."

The evidence that is missing from the District Court's application of the "planning" enhancement is evidence that any of the Defendant's pre-trip "planning

acts" were for the purpose of preparing to assault federal law enforcement at the Capitol – or anywhere else for that matter. The "offense conduct" related to a Sec. 111(b) violation is specific as to federal law enforcements, as those are the only possible victims under that statute.

Section 2A2.2(b)(1) applies when the offense conduct involves more than "typical" planning. The baseline reference isn't to "assault" in a generic fashion – the baseline is to a Sec. 111(b) violation against protected law enforcement officers. For the "planning" enhancement to apply, the planning must be more than is typical for committed offense, i.e., a violation of Sec. 111(b).

There is no evidence that the Defendant was planning an assault on a federal law enforcement officer. The lack of causal -- or even casual -- connection between the "planning acts" relied upon by the Court and the "offense" to which the Defendant pled guilty is revealed by the tortured reasoning used by the Government in its Opposition to justify the Court's determination.

According to the government, intentional "planning" of the offense of assaulting a federal law enforcement officer can be found:

a. In fundraising activities to finance a trip to a political protest;

b. Self-defense gear purchased days/weeks ahead of time -- before an assault on federal law enforcement is even contemplated -- because it would allow the defendant to evade reprisal while in the act;

c. Soliciting others to attend because it constitutes "planning" for the presence of a mob to engage in a riot leading to officers being assaulted.

5

Using a parity of reasoning, this list could be extended to include when the Defendant last registered his truck to ensure he was not stopped by highway patrol while traveling. It could be extended to include snacks purchased before leaving so as to avoid the necessity of stopping to eat, which might have caused him to be late in arriving. Under the Government's rationale, both would be "involved" in delivering the Defendant to the grounds of the Capitol in close proximity to Officer K.K. on January 6.

The Government's rationale extends so far beyond the boundary of the "offense" as to make the crime to which the defendant pled guilty nothing more than a footnote to the hyperbolic narrative it substitutes for the simple facts as they apply to the individual defendant and his actions. The Government wants this Court to focus on the spectacle of the day, and substitute a visceral reaction to that spectacle in place of the crime to which the Defendant pled guilty – picking up an object at his feet on the ground and using it in an unsuccessful effort to dislodge a pepper-spray device from the hands of the law enforcement officer employing it.

The Defendant was charged with no jointly undertaken criminal activity nor was he charged with engaging in a conspiracy with others that might impute to him some criminal liability for the actions of the larger crowd. The focus at sentencing, and in this appeal, should be on his conduct in making use of that length of light-weight flexible plastic pipe.

**B. Under The Specific Offense Characteristic Applicable to Aggravated Assault, A Dangerous Instrument Must Be Used With The INTENT To Commit Bodily Injury.**

There is an apparent inconsistency between the definition of "dangerous weapon" in Sec. 1B1.1, Application Note 1(E), and the definition in Sec. 2A2.2, Application Note 1.

Section 1B1.1 it states, "Dangerous weapon" means (i) an instrument capable of inflicting death or serious bodily injury….

Section. 2A2.2 Application Note 1 states, "Dangerous weapon" has the meaning given that term in §1B1.1, Application Note 1, and includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury."

The Cambridge Dictionary defines a "weapon" as "any object used in fighting or war, such as a gun, bomb, knife, etc."

The American Heritage Dictionary defines it as "An instrument of attack or defense in combat, as a gun, missile, or sword.

A length of flexible plastic PVC pipe is not a "weapon" as that word is commonly used. But it can be brought under Sec. 2A2.2(b)(2) if it is an "instrument" not ordinarily used as a "weapon" but is involved in the offense "with the intent to commit bodily injury."

7

Defendant Video Exhibits "A" and "B" to this appeal were both played by the Government at sentencing. As each video shows, the PVC pipe was "dropped" from high to low – it was not swung side-to-side in an effort to hit Officer K.K.'s head, face or torso as claimed by the Government in the Opposition. The PVC pipe did not strike the Officer K.K. -- it fell short of the location where he was standing – and it was clearly being employed against the device he was holding. In fact, Officer K.K. had to reach forward with his free hand in order to grab the end before it was pulled back.

Again, the Government relies on the District Court's statement to justify … the District Court's finding. Yes, the Court said the Defendant's act was done "with the intent to commit bodily injury" – but there was no evidentiary support for that determination as to "intent," as that conclusion is not supported by the video evidence and was "clearly erroneous."

There was no other evidence before the Court at sentencing from which an "intent" to commit bodily injury on Officer K.K. could be inferred. As such, the pipe – an instrument – does not meet the definition of a "dangerous weapon" under the Guidelines such as is necessary to justify imposition of the four-level enhancement under Sec. 2A2.2(b)(2).

## CONCLUSION

Based on the foregoing, Defendant Lucas Denney requests that his sentence be vacated, that his case be remanded to the District Court for re-sentencing, and that the District Court be ordered to not include in the Guideline calculation the "Specific Offense Characteristics" for "planning" or for "use of a dangerous weapon."

Dated: January 19, 2023       Respectfully Submitted,

                /s/ William L. Shipley
                William L. Shipley, Jr., Esq.
                PO BOX 745
                Kailua, Hawaii 96734
                Tel: (808) 228-1341
                Email: 808Shipleylaw@gmail.com

**CERTIFICATION OF SERVICE**

I hereby certify that on January 19, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 27(d)(2)(A), that the APPELLANT'S REPLY BRIEF was prepared in Times New Roman 14 point font and contains 1722 words.

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com