# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 8, 2024            Decided April 12, 2024

No. 22-3084

UNITED STATES OF AMERICA,
APPELLEE

v.

LUCAS DENNEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cr-00070-1)

*William L. Shipley* argued the cause and filed the briefs for appellant.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb* and *Nicholas P. Coleman*, Assistant U.S. Attorneys.

Before: MILLETT, KATSAS and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: Under the Electoral Count Act, 3 U.S.C. § 15(a), the United States Congress meets and certifies the results of a prior year's presidential election on the sixth

2

day of January. On January 6, 2021, during the certification of the 2020 presidential election results, a mob unlawfully entered the United States Capitol, causing substantial damage to the building and the suspension of the certification proceeding.[1] Based on his participation in this riotous incident at the Capitol, Lucas Denney was arrested and indicted for violating 18 U.S.C. § 111(a)(1) and (b), which prohibit an assault on a federal officer with a dangerous weapon while he is engaged in his official duties. Denney pleaded guilty, and the district court imposed a non-guidelines sentence of fifty-two months in the Bureau of Prisons. In calculating Denney's sentence, the district court applied (1) a two-level enhancement for "more than minimal planning" under the United States Sentencing Guidelines ("Guidelines" or "USSG") § 2A2.2(b)(1); and (2) a four-level enhancement for use of "a dangerous weapon" under USSG § 2A2.2(b)(2). On appeal, Denney challenges the district court's application of these enhancements.[2] We affirm the district court because the record supports the enhancements.

**I.**

**A.**

Denney is a former United States Army specialist (E-4) and an Iraq War veteran with combat training. In December

---

[1] Denney and the Government stipulated to the facts of the incident giving rise to this case. *See United States v. Denney*, No. 22-CR-070 (D.D.C. Aug. 19, 2022), ECF No. 60-1.

[2] Denney does not challenge the substantive reasonableness of his sentence, which "is the catch-all criterion under which the reviewing court monitors (deferentially—for abuse of discretion) whether the district court has given reasonable weight to all the factors required to be considered." *United States v. Russell*, 600 F.3d 631, 633 (D.C. Cir. 2010).

3

2020, Denney was serving as the President of a Texas-based militia called the Patriot Boys of North Texas. As President, Denney actively communicated with the Proud Boys, a militant organization, and acknowledged a shared mission to counter ANTIFA, Black Lives Matter, and other organizations Denney labeled "communist radical groups." On December 19, 2020, President Trump issued a public announcement regarding a big protest in D.C. on January 6—which Denney interpreted as a call to arms. *See, e.g.*, *United States v. Denney*, No. 22-CR-070 (D.D.C. Aug. 19, 2022), ECF No. 60-1 (Statement of Offense) at 7 ¶ 19 ("The rally on the 6th is going to be historic I promise you that. If you know anyone like us that can go and that will actually fight, then we could use them"); William M. Arkin, *Ecstatic Donald Trump Fans Retweeted His Call for 'Wild' Protests*, NEWSWEEK.COM (Dec. 19, 2021), https://www.newsweek.com/ecstatic-donald-trump-fans-retweeted-his-call-wild-protests-1658193. As a result, Denney began recruiting others to join him in D.C., procuring funding to cover travel and housing costs, and purchasing helmets, pepper spray, protective vests, other equipment, and supplies. A few days before the riot, on January 4, 2021, Denney shared with a colleague that he believed the Capitol Police had joined forces with ANTIFA—and to Denney, this meant "civil war" and World War 3 were on the horizon. Statement of Offense at 15 ¶ 47.

**B.**

In the early morning of January 6, 2021, Denney and others fought members of ANTIFA and Black Lives Matter. Later, at about 1:30 p.m., Denney entered restricted Capitol grounds and began aggressively approaching police officers—repeatedly yelling and pulling on the metal barricades protecting the Capitol. Denney's interaction with Capitol Police officers continued when he extended "a small object"

4

towards them, threw a "small cannister" at them, and engaged in a "tug-of-war" in an effort to take a police baton. Statement of Offense at 17 ¶¶ 54, 56, 57.

Around 2:23 p.m., D.C. Metropolitan Police Sergeant K.K. ("Sgt. K.K.") was positioned on an elevated structure between the crowd and the west side of the Capitol. Individuals below began throwing debris at the officers, and Sgt. K.K. used crowd-control spray in response. Denney attempted to grab the cannister from Sgt. K.K., who again deployed the spray. Denney retreated and returned with a polyvinyl chloride ("PVC") pole, which he swung at Sgt. K.K.—missing Sgt. K.K., but striking a photojournalist. Other officers and Sgt. K.K. unsuccessfully attempted to disarm Denney. Less than a minute later, "Denney and another rioter grabbed a large tube and together they launched it towards the location where Sgt. K.K. had been [previously] positioned." Statement of Offense at 18 ¶ 60.

Denney's assaultive behavior continued throughout the afternoon. After forcing himself into a tunnel connecting parts of the Capitol, Denney and another rioter shoved a riot shield into a line of officers attempting to hold off the rioters. Minutes later, he appeared to direct several other rioters toward an isolated officer whom other rioters then surrounded and pulled out of the tunnel.

On December 13, 2021, Denney was arrested on a criminal complaint in Kinney County, Texas for his involvement in the January 6th Capitol riot.

### C.

Following arrest and indictment, Denney pleaded guilty (without benefit of a plea agreement) to one count of

5

assaulting, resisting, or impeding certain officers using a dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b). At sentencing, Denney disputed the application of 1) a two-level enhancement for an assault involving "more than minimal planning" under USSG § 2A2.2(b)(1); and 2) a four-level enhancement for using "a dangerous weapon" under USSG § 2A2.2(b)(2). The district court found that both enhancements applied but varied downward and sentenced Denney to fifty-two months of imprisonment. The district court entered judgment on October 14, 2022, and Denney filed his notice of appeal on October 31, 2022.

**II.**

The Federal Rules of Appellate Procedure require a notice of appeal in a criminal case to be filed within fourteen days of entry of the judgment being appealed. Fed. R. App. P. 4(b)(1)(A)(i). The filing date of Denney's notice of appeal falls outside this period. Even so, Rule 4(b) is a claims-processing rule that "is not jurisdictional," adherence to which "may therefore [be] forfeit[ed]" by the Government. *United States v. Byfield*, 522 F.3d 400, 403 n.2 (D.C. Cir. 2008) (citation omitted); *cf. Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1310 (D.C. Cir. 2021) (stating that the parallel time limit for civil appeals in Rule 4(a) "is a claims-processing rule instead of a jurisdictional rule"); *Eberhart v. United States*, 546 U.S. 12, 19 (2005) ("These claim-processing rules thus assure relief to a party properly raising them, but . . . where the Government failed to raise a defense of untimeliness . . . , it forfeited that defense."). Accordingly, we interpret the Government's statement that it opposes dismissal of Denney's appeal as a waiver of any untimeliness objection. *See* Appellee Br. at 2 n.2.

6

## III.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *See In re Sealed Case*, 449 F.3d 118, 121 (D.C. Cir. 2006) ("Although we agree that § 1291 provides jurisdiction for us to hear Appellant's challenge to his conviction . . . § 1291 is not a sufficient basis to allow us to consider challenges to a sentence[,] [f]or that, we look to 18 U.S.C. § 3742, which we have held is 'the statute conferring jurisdiction on the appellate courts to review sentences.'" (citations omitted)). When evaluating a district court's application of the USSG, we review legal questions "*de novo*"; accept factual findings unless clearly erroneous; and "'give due deference to the district court's application of the [sentencing] guidelines to facts,'" which "'falls somewhere between *de novo* and clearly erroneous.'" *United States v. Bikundi*, 926 F.3d 761, 796–97 (D.C. Cir. 2019) (citations omitted) (emphasis in original); *see also United States v. Mellen*, 393 F.3d 175, 183 (D.C. Cir. 2004) ("[W]here as here the relevant conduct issue involves not only a factual question, but 'the district court's application of the guidelines to the facts,' the proper standard is due deference—one between clear error and *de novo* review." (citing 18 U.S.C. § 3742) (emphasis in original)); *United States v. Kim*, 23 F.3d 513, 517 (D.C. Cir. 1994) ("Recognizing, then, that we must afford the district judge's determination due deference, we turn to the question whether the crime can be thought to have involved more planning than is typical.").

### A.

In objecting to the "more than minimal planning" enhancement, Denney asserts that planning for January 6th was not "for the purpose of preparing to assault federal law enforcement at the Capitol – or anywhere else for that matter."

7

Reply Br. 5. Rather, Denney claims the planning was for a "political protest where the potential for violence – **from counter-protestors** – could not be ruled out." Appellant Br. 13 (emphasis in original). The district court permissibly rejected that view of the evidence. The court's conclusion that Denney in fact engaged in more than minimal planning for violent altercations with law enforcement officers was supported by ample record evidence. We owe that conclusion due deference. *See Kim*, 23 F.3d at 517.

The Guidelines apply a two-level enhancement where an aggravated assault involved "more than minimal planning." USSG § 2A2.2(b)(1). An application note of the commentary of § 2A2.2 defines "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form." USSG § 2A2.2 cmt. n.2.[3] Based on the record, we find no error in the district court's finding that Denney's aggravated assault of Sgt. K.K. involved "more planning than is typical for commission of" assault in simple form.

Denney observes that the D.C. Circuit lacks precedent directly on-point in the context of aggravated assaults. But attempting to demonstrate "a direct connection between the planning" and the assault of Sgt. K.K. was necessary to trigger the enhancement, Denney cites to the following opinions from other circuits: Eleventh Circuit cases *United States v. Simpson*, 760 F. App'x 931 (11th Cir. Jan. 31, 2019), and *United States*

---

[3] The commentary also provides the following examples: while "luring [a] victim to a specific location or wearing a ski mask to prevent identification would constitute more than minimal planning," simply "waiting to commit the offense when no witnesses were present would not alone constitute more than minimal planning." USSG § 2A2.2 cmt. n.2.

8

*v. Tapia*,[4] 59 F.3d 1137 (11th Cir. 1995); a Tenth Circuit decision *United States v. Coombs*, 823 F. App'x 613 (10th Cir. 2020); and the Fifth Circuit opinion *United States v. Kanu-Bradley*, No. 21-20244, 2022 WL 1055179 (5th Cir. 2022). Appellant Br. 15–18.

Denney points to various facts supporting application of the planning enhancement in *Coombs*, *Simpson*, and *Kanu-Bradley* that he argues are absent here. *See Kanu-Bradley*, 2022 WL 1055179, at *1 (bringing guns, discussing the plan, and signaling the start of a robbery suggested more than minimal planning); *Coombs*, 823 F. App'x at 618 (placing oneself in the wrong restroom and breaking into an occupied stall while concealing his face showed more than minimal planning in an assault); *Simpson*, 760 F. App'x at 935 (planning and continuous coordination of a robbery pointed to more than minimal planning). But none of those cases adopted or applied the tight nexus rule that Denney advances. They simply affirmed application of the enhancement based on different facts than we have here.

*Tapia* is the only case Denney cited in which the court sustained an objection to the "more than minimal planning" enhancement. In *Tapia*, the Eleventh Circuit found the enhancement was inapplicable to an assault in a prison cell because the assailant did not engage in repeated acts over some time, act to have the victim placed in the cell, or conceal the crime. *Tapia*, 59 F.3d at 1144. As the Eleventh Circuit explained in a later unreported case, nothing in *Tapia* or the "more than minimal planning" enhancement requires a

---

[4] We note that Denney attributed quoted language from *United States v. Tapia* to a Second Circuit decision identified as *United States v. Ray*, while providing *Tapia*'s cite information. *See* Appellant Br.17–18. *United States v. Tapia* is the correct case name for both the citation and the quotation.

9

"'sophisticated' or 'elaborate' scheme," only evidence of planning, coordination, and concealment." *Simpson*, 760 F. App'x at 935.

Unlike *Tapia*, there is plentiful evidence of planning, coordination, and concealment in this case. The district court explained why Denney's pre-January 6th activities—veiled communications, cooperation with the Proud Boys, statement of intention to march on the Capitol, procurement of helmets, body protective gear, and pepper spray, and recruitment of others to join his Patriot Boys of North Texas—establish "more than minimal planning" in relation to the aggravated assault of Sgt. K.K. *See* J.A. 34–42. While Denney contends his actions related to "self-defense," *see* J.A. 39 ll. 6–8, the record supports the district court's conclusion that these claims are "implausible" because Denney "planned to commit…violence on January 6"—*i.e.*, "to fight"—to "tak[e] back the country" and "ensure 'Trump w[ould] stay President.'" Appellee Br. 21. Denney was more than prepared to commit violence at the Capitol on January 6th, even if he did not specifically plan to assault Sgt. K.K. with the PVC pipe. As part of that extensive planning, Denney was of the view that the Capitol Police "ha[d] joined forces" with ANTIFA, and so Denney's plans for "[c]ivil war" included law enforcement from the outset. Statement of Offense at 15 ¶ 47. As a result, even assuming without deciding that the minimal-planning enhancement requires the tight nexus between planning and the offense of conviction, the record in this case directly ties Denney's plans to assaults on police officers.

In addition, during the assault itself, Denney engaged in additional planning. After trying and failing to manually pull the crowd-control-spray from Sgt. K.K.'s hands, Denney looked around for an alternative approach and found a weapon—the PVC pipe—and swung that at Sgt. K.K. When

10

that failed, Denney tried another tack: He joined with another rioter and launched a large tube toward the place where Sgt. K.K. had been standing. Regardless of whether that on-the-scene planning would suffice to establish minimal planning, the facts surrounding the assault itself undergird the district court's rejection of Denney's suggestion that the entire incident was spontaneous. Similarly, Denney's continued assaultive behavior toward law enforcement throughout the day reinforces the district court's conclusion that Denney planned to violently confront and assault law enforcement.

In the end, we considered the record and afford the district court's findings due deference on the application of USSG § 2A2.2(b)(1). *See Kim*, 23 F.3d at 516–17 (applying due deference to more-than-minimal-planning enhancement under USSG § 1B1.1). We likewise accept the district court's factual findings as supported by the record and not clearly erroneous. *Id.* Accordingly, we affirm the district court's findings of "more than minimal planning" and application of a two-level enhancement.

**B.**

In objecting to the "dangerous weapon" enhancement, Denney complains the district court lacked sufficient evidence to support "an intent to do bodily harm" as required "to support the additional +4 level enhancement for having used a 'weapon[]' or 'otherwise dangerous instrument with intent to do bodily injury.'" Appellant Br. 19–20. The Guidelines apply a four-level enhancement when "a dangerous weapon (including a firearm) was otherwise used"[5] in the commission

---

[5] "'**Otherwise used**' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or

11

of an aggravated assault. USSG § 2A2.2(b)(2). The commentary to section 2A2.2 then defines "dangerous weapon" by reference to USSG § 1B1.1, Application Note 1, and it further clarifies that the term "includes any instrument that is not ordinarily used as a weapon," such as a car, chair, or an ice pick, "if such an instrument is involved in the offense with the intent to commit bodily injury." USSG § 2A2.2 cmt. n.1; *see also id.* § 1B1.1 cmt. n.1(E) (defining "dangerous weapon"). A "bodily injury" is "any significant injury"—*i.e.*, a "painful and obvious" injury, or one where "medical attention ordinarily would be sought." *Id.* § 1B1.1 cmt. n.1(B).

"[W]hether an object qualifies as a dangerous weapon" is "a question of fact," *United States v. Taoufik*, 811 F. App'x 835, 840 (4th Cir. 2020), and such a factual finding is "affirmed unless 'clearly erroneous.'" *Kim*, 23 F.3d at 517. The district court addressed this factual issue during the following colloquy with Denney at his plea hearing:

> THE COURT: So did you in fact assault, resist, oppose, impede, intimidate or interfere with an officer or employee of the United States in the performance of that officer or employee's official duties?
> DENNEY: Yes, sir.
> THE COURT: And did you do so forcibly?
> DENNEY: Yes, sir.
> THE COURT: And am I correct that based on what Mr. Shipley said, my understanding is that the way you did so was by swinging a long pole of some type at a police officer?

---

possessing a firearm or other dangerous weapon." USSG § 1B1.1 cmt. n.1(J) (emphasis in original).

12

| | |
|---|---|
| DENNEY: | Yes, sir. It was a plastic pole, it was like a PVC tube. |
| THE COURT: | And did you in fact swing that at an officer or an employee -- |
| DENNEY: | Yes, sir. |
| THE COURT: | And was that for purposes of assaulting or resisting that officer or employee of the United States -- or person assisting an officer or employee of the United States? |
| DENNEY: | The purpose was to block the pepper spray, but I did in that hit -- he did get hit, yes. |
| THE COURT: | So you did hit an officer. And was that a Metropolitan Police Department officer? |
| DENNEY: | I don't know, sir. |
| THE COURT: | But you acknowledge that it was either an officer of the United States or a person assisting such an officer of the United States? |
| DENNEY: | Yes, sir. |
| THE COURT: | And you forcibly hit that individual, is that correct? |
| DENNEY: | Yes, sir. |
| THE COURT: | And did you do so while that officer or person was -- I'm sorry, did you do so while the officer or person who was assisting the officer was engaged in his or her official duties? |
| DENNEY: | Yes, sir. |
| THE COURT: | And did you do so intentionally? |
| DENNEY: | Yes, sir. |

13

    **THE COURT:**    **And do you also acknowledge that the pipe that you hit the officer with was a dangerous weapon?**
    **DENNEY:**    **Yes, sir.**

*Denney*, (D.D.C. July 26, 2022), ECF No. 55 (Plea Hr'g Tr.) at 24:23–26:14 (emphasis added).

Relying on Denney's admissions in open court, the district court determined that Denney used a dangerous weapon in the assault on Sgt. K.K. We find that conclusion is not clearly erroneous. *Cf. In re Sealed Case*, 936 F.3d 582, 589 (D.C. Cir. 2019) ("[B]ecause of what he already agreed to in his plea, Appellant may not relitigate before us what he did or did not do. His arguments on appeal must be based on the facts established through his plea.").

In addition, given that colloquy, we need not decide Denney's argument that a showing of intent is required for the enhancement to apply when a dangerous weapon is used. Even if there were such a requirement, Denney openly admitted that he struck Sergeant K.K. "forcibly" and "intentionally" with a PVC pipe. Plea Hr'g Tr. at 26:2–11. Denney argues that his admission only extended to his use of a dangerous weapon for the purposes of 18 U.S.C. § 111(b), and not for the Guidelines enhancement. As to the latter, he argues an intent to cause bodily injury was required. However, we need not decide whether the relevant Guidelines provision requires an intention to cause bodily injury. The district court found as a factual matter that, even assuming Denney's primary intention was to knock the crowd-control spray from Sgt. K.K.'s hands, that would nonetheless mean Denney intended to hit Sgt. K.K.'s body with the pole with sufficient force to dislodge the weapon and thereby meant to cause him injury. That factual finding was not clearly erroneous, and indeed is amply corroborated by

14

Denney's repeated assaults on Sgt. K.K. and other officers throughout the day.

We therefore affirm the district court's application of a four-level enhancement to Denney's offense level because the aggravated assault of Sgt. K.K. involved the use of a "dangerous weapon" under Guidelines § 2A2.2(b)(2)(B).

\*\*\*\*\*

Accordingly, we affirm the district court's judgment.

*So ordered.*